UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| JAY TANIGUCHI,<br><br>    Petitioner,<br><br>v.<br><br>SANDRA BUTLER, *Warden*,<br><br>    Respondent. | Civil Action No. 14-CV-120-KKC<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Jay Taniguchi is an inmate confined by the Bureau of Prisons in the Federal Correctional Institution-Manchester located in Manchester, Kentucky. Proceeding without counsel, Taniguchi has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1], challenging the federal drug and firearm sentences which he is currently serving. Taniguchi has paid the $5.00 filing fee. [R. 3]

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions under Rule 1(b)). The Court evaluates Taniguchi's petition under a more lenient standard because he is not represented by an attorney, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). The Court also accepts his factual allegations as true and construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

As explained below, the Court will deny Taniguchi's habeas petition because the claims which he asserts cannot be pursued under 28 U.S.C. § 2241.

# LITIGATION HISTORY

Taniguchi and James W. White were both part of a broad-ranging conspiracy to rob armored car companies and local businesses of cash at gunpoint. On March 14, 2000, a grand jury in the Ohio returned a six-count indictment against Taniguchi and White. *United States v. Jay Taniguchi, et al.*, No. 2:00-CR-50 (S.D. Ohio, 2000) Count one charged Taniguchi and White with violation of the Hobbs Act, 18 U.S.C. § 1951, for their participation in a broad conspiracy involving multiple robberies; Count two charged Taniguchi and White with violating the Hobbs Act for their participation in the Metropolitan armored truck robbery; Count three charged White with brandishing a firearm in the commission of those crimes, in violation of 18 U.S.C. § 924(c); Count four charged Taniguchi with brandishing a firearm in the commission of those crimes in violation of 18 U.S.C. § 924(c); Count five charged Taniguchi with a violation of the Hobbs Act for participation in the Red Zone robbery; and Count six charged Taniguchi with a violation of § 924(c), brandishing a firearm during a crime of violence. In May 2000, a superseding indictment was filed, repeating the other charges but also adding a bank larceny charge, in violation of 18 U.S.C. § 2113(b), against Taniguchi and White.

Taniguchi and White both pleaded not guilty to these charges, and the case proceeded to trial. On July 24, 2000, the jury returned its verdict, finding Taniguchi and White guilty on all counts. Taniguchi was sentenced to four concurrent 120 month prison terms for the two Hobbs Act and bank larceny convictions and two consecutive sentences of 84 and 300 months on the two firearm violations, resulting in a total prison term of 504 months; White received a 78-month sentence on the two Hobbs Act violations, and a consecutive 84-month sentence on the one firearm violation.

Taniguchi and White appealed, but their convictions and sentences were affirmed. *United States v. Taniguchi*, 49 F. App'x 506, 508-10 (6th Cir. Oct. 11, 2002)[1] On appeal, both Taniguchi and White argued, among other things, that insufficient evidence existed to convict them of brandishing a firearm in the commission of a robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). After lengthy analysis, the Sixth Circuit rejected both defendants' challenges to their § 924(c) convictions, finding that as to Taniguchi, "…the evidence supporting his guilt on these charges is considerable." *Taniguchi*, 49 F. App'x at 511. The Sixth Circuit concluded that the trial testimony established that Taniguchi's conduct of procuring the firearms used in the robberies qualified him as an aider and abettor to his cohort's brandishing of a firearm during the robberies. *Id.*, at 511-12.

Taniguchi also argued on appeal that the district court improperly enhanced his sentence under §§ 924(c)(1)(A)(ii) and (C), based on its incorrect determination that he had a second or subsequent conviction. *Taniguchi*, 49 F. App'x at 517. Taniguchi argued that under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government should have been required to prove to the jury, beyond a reasonable doubt, any and all facts supporting sentence enhancements, rather than the district court determining those facts. *Id.*

The district court rejected Taniguchi's argument that his "second or subsequent conviction" leading to a § 924(c)(1)(C) enhancement should have been submitted to a jury and proved beyond a reasonable doubt. *Id.* The court explained that: (1) where a defendant is charged and convicted of separate offenses to which § 924(c) applies, then those convictions are eligible to count as both the first and the "second or subsequent conviction" under § 924(c); and

---

[1] The Sixth Circuit described the criminal operation of Taniguchi and White as follows:

> Taniguchi was the mastermind behind the conspiracy, recruiting insiders and employees of the businesses that were targeted to assist in the execution of the robberies. White was one of the muscle-men of the operation, using his imposing size to carry out the actual robberies.

*Taniguchi*, 49 F. App'x at 509.

(2) because the fact of his prior conviction was exempted from the mandate of *Apprendi*, Taniguchi was not entitled to a jury finding that he has a prior conviction. *Id.*, at 517-18 ("Both the Supreme Court and this Court have found that a simultaneous conviction of separate offenses eligible under § 924(c)(1)(C) is sufficient to satisfy the "second or subsequent conviction" language of this statute.")

The Sixth Circuit acknowledged, however, that a "more difficult question" existed as to whether the factual finding behind the brandishing enhancement of seven years under § 924(c)(1)(A)(ii) should have been submitted to a jury and proven beyond a reasonable doubt. *Id.*, at 518. The court ultimately determined that the factual finding supporting that sentencing enhancement did not have to be submitted to a jury, based on *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406 (2002), which held that the brandishing enhancement was a sentencing factor, not an element of the offense that must be submitted to a jury and proved beyond a reasonable doubt. *Id.* (citing *Harris*, 122 S.Ct. at 2414). The Sixth Circuit therefore determined that Taniguchi's argument on that issue lacked merit.

On September 11, 2003, Taniguchi filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging seven constitutional violations that occurred during his trial and on direct appeal. *See* Taniguchi Criminal Case, No. 2:00-CR-50-ALM-TPK [R. 118, therein][2] One of the argument which Taniguchi asserted was that that he had been denied the effective assistance of *appellate* counsel, claiming that during oral argument on direct appeal, his attorney had misstated material facts regarding the sufficiency of evidence as to his conviction on Count Four (brandishing a firearm in the commission of a robbery, in violation of 18 U.S.C. §924(c)). On November 15, 2004, the Magistrate Judge issued a 36-page Report and Recommendation ("R &

---

[2] Taniguchi's § 2255 petition was also simultaneously docketed as a separate civil proceeding. *See Taniguchi v. United States*, No. 2:03-CV-787-ALM-TPK (S.D. Ohio, 2003) [R. 1, therein]

R") to deny Taniguchi's §2255 motion, finding that none of his arguments had merit. [R. 143, therein]

On January 12, 2005, the district adopted the Magistrate Judge's R & R and denied Taniguchi's § 2255 motion. [R. 152, therein] On appeal, the Sixth Circuit declined to issue a certificate of appealabilty ("COA") as to six of Taniguchi's claims, but did grant a COA on the issue of whether *Blakely v. Washington*, 542 U.S. 296 (2004) was retroactively applicable, and if so, whether Taniguchi's sentence violated *Blakely*. [R. 188, therein; *see also Taniguchi v. United States*, No. 05-3144 (6th Cir. Feb. 17, 2006)]

Almost two years later, the Sixth Circuit rejected Taniguchi's *Blakely* claim, citing its earlier decision *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005), which held that *Blakely* did not apply retroactively to cases on collateral review, and noting that Taniguchi's conviction became final before *Blakely* was rendered. [R. 208, therein; *see also Taniguchi v. United States*, No. 05-3144 (6th Cir. Feb. 4, 2008)] The Court determined that Taniguchi's appeal failed because he did not obtain a COA as to any other issue.

## CLAIMS ASSERTED IN THE § 2241 PETITION

Taniguchi argues that pursuant to *Rosemond v. United States*, ---U.S. ---, 134 S.Ct. 1240, 188 L.Ed.2d 248 (2014), the Supreme Court reinterpreted the meaning of the statute under which he was convicted, rendering him factually innocent as to Count Four and Count Six of his conviction of 18 U.S.C. §§ 924 (c) and 2, Aiding and Abetting the brandishing of a firearm during and in relation to a crime of violence.

In *Rosemond*, the Court held that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun" and also held that the aiding-and-abetting conviction "requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." *Id*. at

5

1248–49.  "[T]he intent must go to the specific and entire crime charged"; so, for example, in *Rosemond*, to the full scope of a § 924(c) violation—predicate drug crime plus gun use.  *Id*. at 1248.  The Court explained that, "[t]o aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'"  *Id*. (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).

Pointing to various trial testimony excerpts, Taniguchi contends that under *Rosemond*'s framework, the government failed to prove that he actively participated in the underlying drug trafficking with either the intention or advanced knowledge that a participant would brandish a gun during the commission of the crime.  Taniguchi states, "There was absolutely no testimony or evidence that Petitioner, allegedly being part of the same conspiracy as Blankenship, in any way had the intent or 'advanced knowledge' to use of a gun the Westland Mall robbery by James White."  [R. 1-1, p. 3]  Taniguchi reiterates the same contention, in detail, as to the use of the gun during the robbery of the Red Zone Nightclub.  [*Id*., p. 6 ("Petitioner could have never had 'advanced knowledge' of the use of a gun in the robbery of Corso (during the Red Zone robbery).")

Taniguchi alleges that because *Rosemond* "…narrows significantly the statute under which [he] was convicted," he "…stands convicted of having committed an act that Congress did not intend to criminalize."  [*Id*., p. 8]  Taniguchi states that if *Rosemond* had been the law in July 2000 (prior to his conviction) the district court "…surely would have granted his Rule 29 motion (requesting a judgment of acquittal)."  [*Id*.]  Taniguchi contends that is actually innocent of his § 924 (c) convictions under Counts Four and Six of the Indictment, and of "Aiding and Abetting" the brandishing, using and carrying of a firearm during and in relation to a crime of violence.  Taniguchi asserts that his conviction on these two counts violates his right to due process of law, guaranteed by the Fifth Amendment of the U.S. Constitution.

**DISCUSSION**

As a general rule, 28 U.S.C. § 2255 provides the correct avenue to challenge a federal conviction or sentence, whereas a federal prisoner may file a § 2241 petition if he is challenging the execution of his sentence (*i.e.*, the BOP's calculation of sentence credits or other issues affecting the length of his sentence). *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001); *see also Charles Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999). The Sixth Circuit has explained the difference between the two statutes as follows:

> [C]ourts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions or imposition of their sentence shall be filed in the [jurisdiction of the] sentencing court under 28 U.S.C. § 2255, and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241.

*Terrell v. United States*, 564 F.3d 442, 447 (6th Cir.2009) (internal quotation marks omitted).

In short, 28 U.S.C. § 2255 provides the primary avenue for federal prisoners seeking relief from an unlawful conviction or sentence, not § 2241. *See Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 2003). Here, Taniguchi is not challenging the execution of his sentence, such as the computation of sentence credits or parole eligibility, issues which fall under the ambit of § 2241. Instead, Taniguchi contends that based on *Rosemond*, he is actually innocent of his § 924(c) convictions under Counts Four and Six of the Indictment, for "Aiding and Abetting" the brandishing, using and carrying of a firearm during and in relation to a crime of violence. Taniguchi is thus challenging the constitutionality of his sentences on Fifth Amendment grounds, under § 2241 by way of the "savings clause" of § 2255(e). However, § 2241 is not the proper mechanism for making this claim.

A federal prisoner may challenge the legality of his detention under § 2241 only if his remedy under § 2255(e) is found to be inadequate or ineffective. *Wooten v. Cauley*, 677 F.3d 303, 306-07 (6th Cir. 2012); *Charles*, 180 F.3d at 756. This exception does not apply where a prisoner

7

fails to seize an earlier opportunity to correct a fundamental defect in his or her convictions under pre-existing law, or actually asserted a claim in a prior post-conviction motion under § 2255 but was denied relief. *Charles*, 180 F.3d at 756. Further, a prisoner proceeding under § 2241 can implicate the savings clause of § 2255 if he alleges "actual innocence," *Bannerman v. Snyder*, 325 F.3d 722, 724 (6th Cir. 2003), and a petitioner may only pursue a claim of actual innocence under § 2241 when that claim is "based upon a new rule of law made retroactive by a Supreme Court case." *Townsend v. Davis*, 83 F. App'x 728, 729 (6th Cir. 2003). "It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective." *Charles*, 180 F.3d at 756.

Taniguchi contends that his § 2255 motion was inadequate or ineffective because *Rosemond*, decided long after his § 2255 motion was denied, applies retroactively to him and supports his claim that he was improperly convicted under § 924(c). As the Sixth Circuit Court of Appeals has recently noted, "The Supreme Court did not state whether the principles explained in *Rosemond* apply retroactively to convictions that are final under state law." *Berry v. Capello*, --- F. App'x ---, 2014 WL 2973385, at *12 (6th Cir. Aug. 14, 2014) Taniguchi was, of course, convicted of federal offenses. In *Berry*, the Sixth Circuit assumed without deciding that *Rosemond* applies retroactively, but nevertheless determined "…that the trial evidence supported the jury's determination that Berry possessed a state of mind extending to the entire crime, including the necessary intent to aid and abet felony murder and to aid and abet assault with intent to rob while armed." *Id*.

Several district courts have, however, directly addressed the issue of whether *Rosemond* applies retroactively, and have determined that because the holding was dictated by established precedent, *Rosemond* does not apply retroactively to cases on collateral review. *See United States v. Foreman*, No. 02-CR-135-TCK, 2014 WL 4403445, at *1 (N.D. Okla. Sept. 5, 2014); *Minaya v.*

8

*United States*, --- F.Supp.2d ----, 2014 WL 4229993, at *2 (S.D. N.Y. Aug. 19, 2014), *Gentile v. Fox*, No. 2:14-CV-01726, 2014 WL 3896065, at *9 (C.D. Cal. July 11, 2014); *Martinez v. United States*, 2014 WL 3361748, at *2 (N.D. Tex. July 9, 2014). The Court agrees with the analysis and result set forth in these cases, and concludes that *Rosemond* does not apply retroactively to cases on collateral review, such as the § 2241 petition which Taniguchi has filed in this proceeding.

But even assuming that *Rosemond* applies retroactively to cases on collateral review, as the Sixth Circuit did in *Berry*, this Court is nevertheless persuaded that the trial court record supports Taniguchi's § 924(c) firearm convictions, and that Taniguchi had the requisite state of mind as to the entire crime charged, which consisted of both the two Hobbs Act robberies and the brandishing of the gun during these robberies.

*Rosemond* holds that a person is liable for aiding and abetting a crime if "he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S.Ct. at 1245, and that a defendant may "assist in § 924(c)'s violation by facilitating either the [underlying violation] or the firearm use (or of course both)." *Id*. at 1247. With respect to an armed drug sale under 18 U.S.C. § 924(c), the Court held that an aiding and abetting conviction requires the government to prove the defendant had "advance knowledge" that a coconspirator would use or carry a gun as part of the crime's commission. *Id*. at 1243. "[A]dvance knowledge," continued the Court, "means knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id*. at 1249–50. The Court explained:

> ... An active participant in a drug transaction [or crime of violence] has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale [or crime of violence], but for an armed one. In so doing, he has chosen ... to align himself with the illegal scheme in its entirety—including its use of a firearm. And he has determined ... to do what he can to make that scheme succeed. He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun

> to the drug deal [or crime of violence] himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a § 924(c) offense—i.e., an armed drug sale [or crime of violence].
>
> For all that to be true, though, the § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense

*Rosemond*, 143 S.Ct. at 1249-50 internal quotation marks, alterations, citations, and footnote omitted).

Taniguchi's two § 924 (c) convictions, derived under the aiding and abetting theory, survive any collateral challenge based on *Rosemond*. First, as previously discussed, when the Sixth Circuit affirmed Taniguchi's convictions and sentence on direct appeal on October 11, 2002, it cited to *substantial* trial testimony which established that Taniguchi planned the both the Westland Mall and Red Zone nightclub robberies; that prior to both robberies, Taniguchi had supplied his confederates with guns; and that his confederates then brandished those same guns during both robberies. *See Taniguchi*, 49 F. App'x at 511-12. The Sixth Circuit cited the following facts in affirming Taniguchi's conviction for brandishing a firearm in the commission of a robbery under 18 U.S.C. § 924(c)(1)(A)(ii):

> Taniguchi's two § 924(c)(1)(A)(ii) convictions are based on an aiding and abetting theory of liability for the Westland Mall robbery and the May 31, 1999 robbery of the Red Zone. While Taniguchi is correct that he was present at neither of these robberies, the evidence supporting his guilt on these charges is considerable. Taniguchi admitted planning the Westland Mall armored truck robbery to a number of witnesses, and supplied one of the firearms involved in the robbery. Taniguchi also planned the Red Zone robbery, and gave Stevenson the firearm used to rob the club owner. Taniguchi claims that the fact that Stevenson actually brandished the gun during the robbery was unplanned and thus outside the scope of the jointly undertaken criminal activity. However, Taniguchi's admonition to Stevenson "not to use the gun" may be interpreted to mean "do not discharge the gun" as readily as "do not brandish it." Furthermore, the brandishing was a natural consequence of Taniguchi's assistance in planning an armed confrontation and supplying the attacker with a weapon…. Following the robbery, Taniguchi apparently did not feel that the conspiracy had diverged too much from plan when he retrieved the firearm from Stevenson and took his share of the cash.

Taniguchi's conduct contributed to the execution of the crime, and certainly evidenced his intent to accomplish the aims of the crime. Under aiding and abetting liability, this is sufficient conduct and intent for Taniguchi to be punished as a principal in the crime…. 18 U.S.C. § 2; 18 U.S.C. § 924(c)(1)(A)(ii).

Accordingly, we affirm the district court's decision to reject the Rule 29(c) motion for judgment of acquittal with regard to Taniguchi's and White's convictions for violation of 18 U.S.C. § 924(c).

*Taniguchi*, 49 F. App'x at 512.

Admittedly, the Sixth Circuit's analysis of Taniguchi's liability under § 924(c) predated *Rosemond*, *see Taniguchi*, 49 F. App'x at 511,[3] but the facts upon which the Sixth Circuit relied in affirming Taniguchi's § 924(c) convictions under Counts Four and Six dictate the same result when analyzed under *Rosemond*. By supplying his confederates with firearms brandished during the two robberies (both of which Taniguchi planned), Taniguchi necessarily had "advance knowledge" that his confederates might brandish a gun while committing the two robberies. Thus, based on the testimony presented at trial, Taniguchi's conduct of supplying the guns brandished during the two robberies satisfies the *Rosemond*'s requirement that the government must prove that the defendant actively participated in the underlying crime with "advance knowledge" that a confederate would use, carry, or brandish a gun during commission of the underlying crime. *Rosemond*, 134 S. Ct. at 1243; 1249-50. A federal court in a post-conviction proceeding can rely on the factual conclusions made by an appellate court in the same case.

---

[3] The Sixth Circuit described the requirements for proving a conviction for aiding and abetting a crime committed in violation of 18 U.S.C. § 924 (c)(1)(A)(ii) as follows:

> A § 924(c)(1)(A)(ii) violation requires the government to prove that, during and in relation to any crime of violence or drug trafficking crime, the defendant carried or brandished a firearm. 18 U.S.C. § 924(c)(1)(A). To be accomplished "in furtherance of the conspiracy," the conduct must "promote the objectives of the conspiracy." *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997). A conviction under the aiding and abetting theory of liability for a § 924(c)(1)(A)(ii) violation requires (a) an act by the defendant that contributes to the execution of the crime, and (b) an intent to aid the execution of the crime. *See United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995); *United States v. Lawson*, 872 F.2d 179, 181 (6th Cir. 1989). Where an accomplice has offered such assistance or encouragement to the principal, then she may be punished as a principal. 18 U.S.C. § 2; *United States v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000).

*Taniguchi*, 49 F. App'x at 511.

*Smith v. Snyder*, 22 F. App'x 552, 553 (6th Cir. 2001); *Myers v. United States*, 198 F.3d 615, 619 (6th Cir. 1999).

Second, two years after the Sixth Circuit affirmed Taniguchi's § 924(c) convictions on direct appeal, the district court, in a comprehensive R & R, plowed the same ground and rejected related arguments which Taniguchi had raised in his § 2255 motion. There, Taniguchi argued, among other things, that his § 924(c) conviction as to Count Four of the Indictment (brandishing a firearm in the commission of a robbery, in violation of 18 U.S.C. §924(c)) should be set aside on Sixth Amendment grounds, because he was denied the effective assistance of appellate counsel when his attorney misstated material facts during oral argument regarding the sufficiency of evidence as to his conviction on Count Four,

The district court adopted the R & R and refused to grant relief under § 2255 as to that claim, relying not only on the analysis set forth in the Sixth Circuit's decision affirming Taniguchi's § 924(c) convictions, but also on the trial testimony of Lawrence Stevenson, who was one of Taniguchi's cohorts in the various robberies. The R & R stated that at trial, Stevenson had testified that he and Taniguchi planned the robbery of the Red Zone nightclub; that because Taniguchi was unable to procure a gun from a confederate named Rami Shehahdeh, Taniguchi instead gave him a gun owned by his (Taniguchi's) own roommate; that he and Taniguchi agreed that he (Stevenson) would pull out and "brandish" a gun during the robbery of the Red Zone; and that he (Stevenson) returned the gun brandished during the Red Zone robbery to Taniguchi after the robbery was committed. *See* Taniguchi Criminal Case, No. 2:00-CR-50 [R. 143, pp. 14-15, therein] The R & R further noted that Christine Gearhart, Stevenson's girlfriend, testified that she saw the gun used in the robbery, and that she corroborated Stevenson testimony that he had returned that gun to Taniguchi "…in a box with other items at Hooters." [*Id.*, p. 15]

The R & R acknowledged that during the oral argument on direct appeal, Taniguchi's appellate counsel had misstated certain facts on the issue of whether Taniguchi actually admitted that Stevenson returned returning the gun used in the robbery to him. But the R & R nevertheless concluded that despite appellate counsel's error, and despite any conflicting testimony as to whether Taniguchi's provided the gun to his cohorts to use during the robberies, Taniguchi had failed to establish that his appellate counsel's mistake resulted in any actual prejudice to him. [*Id.*, pp. 16-17, therein] The Magistrate Judge explained:

> Petitioner's claim that the evidence was constitutionally insufficient to sustain his conviction on brandishing a firearm during the commission of a robbery, in violation of 18 U.S.C. §924(c), failed in view of the evidence presented. The United States Court of Appeals for the Sixth Circuit had before it appellate briefs (not a part of the record before this Court) and the entire record in this case to review prior to dismissing petitioner's claim on the merits. Regardless of any conflicting testimony, in considering a sufficiency of evidence claim, a reviewing court must view all of the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326).
>
> Claim two is without merit.

[*Id.*, p. 17, therein]

These prior findings bear directly on the rule announced, in *Rosemond*, wherein the Supreme Court explained that an aiding and abetting conviction must be supported by evidence that the defendant not only associated himself with the venture, but also that he participated in it "as something that '…he wishes to bring about' and 'seek by his action to make it succeed.'" *Rosemond*, 134 S. Ct. at 1248-49 (citation omitted). The Supreme Court explained that one who participates in an armed robbery cannot avoid the penalties under § 924 (c) if a firearm is carried by an accomplice:

> …By virtue of § 924(c), using a firearm at a drug deal [or a violent crime] ups the ante. A would-be accomplice might decide to play at those perilous stakes. Or he might grasp that the better course is to fold his hand. What he should not expect is

13

the capacity to hedge his bets, joining in a dangerous criminal scheme but evading its penalties by leaving use of the gun to someone else. Aiding and abetting law prevents that outcome, so long as the player knew the heightened stakes when he decided to stay in the game.

*Id.*[4]

Based on framework set forth in *Rosemond* and the Sixth Circuit's summary of the evidence presented against Taniguchi at trial, Taniguchi's conduct "fit the bill" for an aiding and abetting conviction under § 924(c), because the evidence showed that Taniguchi: (1) had advance knowledge that his confederates would be carrying a gun during these robberies, because the testimony at trial indicated that Taniguchi had *supplied them* with the gun; and (2) possessed the state of mind to advance not just the robberies which he had planned, but also the carrying and brandishing of the firearm which he had supplied to his cohorts.

Taniguchi's case is similar to other recent cases in which the defendant unsuccessfully challenged his conviction under *Rosemond*. In *United States v. Bivins*, ---F.Supp.2d ---, 2014 WL 1689285 (E.D. Mich. April 30, 2014), the Michigan district court denied the defendant's § 2255 motion to vacate his sentence based on *Rosemond*, finding that the Plea colloquies established the defendant's foreknowledge that one or more of his accomplices in robbery were carrying guns, as required to find him guilty of aiding and abetting use of firearm during crime of violence. *Id.*, at *4. The Court concluded that although the defendant's acknowledgments fell short of establishing precisely when or how he learned that his accomplices were armed with guns, his admission during the colloquy, that he "knew the guns they were taking into the [store] were

---

[4] *See also United States v. Young*, 561 F. App'x 85, 92 (2d Cir. 2014) ("By finding that [defendant] encouraged the 'actual using, carrying of, or possession' of a firearm in the [charged] robbery, the jury necessarily also had to find that he had advance knowledge of the firearm-related conduct, consistent with the Supreme Court's explication in *Rosemond*."); *Qadar v. United States*, No. 1;13-CV-02967, 2014 WL 3921360, at *14 (E.D.N.Y. Aug. 11, 2014) (denying § 2241 petition based on *Rosemond*, because the Second Circuit law at the time of petitioner's conviction was consistent with the Supreme Court's holding in *Rosemond* that, with respect to the intent element of an aiding and abetting claim in the context of a § 924(c) offense, "defendant's knowledge of a firearm must be advance knowledge---or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice.")

going to be used to assist them in the taking of some product from that store," established that he necessarily knew about guns before robbery took place. *Id.*, at \*\*4-5.

In *United States v. Aoun*, No. 13-20239, 2014 WL 2864587 (E.D. Mich. June 24, 2014), the government conducted two drug raids, in January 2103 and in March 2013, and based on the evidence seized, charged Aoun with numerous federal drug and firearm offenses. The jury found Aoun guilty of numerous offenses, specifically, two counts of Possession of a Firearm in Furtherance of Drug Trafficking.

After the trial, Aoun filed motion for acquittal under Federal Rule of Criminal Procedure 29(c), and for new trial under Federal Rule of Criminal Procedure 33(a), arguing insufficient evidence existed to support the jury's verdict on Counts Four and Eight (Possession of a Firearm in Furtherance of Drug Trafficking) and, specific to Count Eight, Aiding and Abetting. Aoun cited *Rosemond* in support of his claim challenging his aiding and abetting conviction. The district court denied Aoun's motions, stating:

> Turning to the facts relating to Count Eight, the court finds there was sufficient evidence, even under the higher threshold set forth by *Rosemond*. Officers caught Defendant two months earlier with possession of a firearm. Moreover, during the two and one half hours of surveillance, Defendant remained at the premises with the co-defendant and several others. During that time, several guns were located within the home. Also, during the raid, the Defendant's codefendant was caught leaving the premises with four handguns in a bag. A rational jury could draw inferences that the firearms seized were to aid in drug trafficking, and Defendant was aware that the firearms existed at the home.

*Aoun*, 2014 WL 2864587, at a \*5.

In *United States v. Rivera*, ---F. App'x---, 2014 WL 2958447 (2d Cir. July 2, 2014) Rivera was convicted of aiding and abetting the "use" of a firearm in connection with two Hobbs Act robberies (Counts Three and Five of the Indictment). *Id.*, at \*2. On appeal, Rivera argued that there was insufficient evidence to convict him for aiding and abetting the use of a firearm in connection with the robberies in violation of 18 U.S.C. §§ 924(c) and 2. *Id*. The Second Circuit

rejected that claim and affirmed his two § 924(c) convictions, finding that there was "ample evidence" on which a jury could convict Rivera for aiding and abetting the use of a firearm in connection with the Hobbs Act robberies. *Id.*, at *3.

The facts in *Rivera* closely resemble the facts in Taniguchi's case. In *Rivera*, the Second Circuit noted that various cooperating witnesses testified that Rivera had planned the robberies; that one of those witnesses testified that he met with Rivera "several times" to discuss the robbery of a jewelry business, and that it was Rivera's idea to use an unloaded firearm during the that robbery; that Rivera instructed one of his confederates about when and where to retrieve the gun from the robbery of the jewelry business; and that as to the second robbery of a FedEx truck, Rivera had assembled and/or recruited the crew of Russians which committed that robbery. *Id.* The Second Circuit thus concluded, "In light of the foregoing, under any standard, but particularly under the Supreme Court's recently articulated standard for aiding and abetting liability, there was sufficient evidence for a jury to convict Rivera on Counts Three and Five." *Id.*

Here, the Sixth Circuit (on direct appeal) and the district court (in denying Taniguchi's § 2255 motion), identified specific trial testimony-- albeit testimony that some of Taniguchi's defense witnesses contradicted at trial--which established that Taniguchi supplied his confederates with the guns which they later brandished while committing the Westland Mall and Red Zone robberies. The jury believed the testimony of the prosecution's witnesses and found that Taniguchi supplied his cohorts with guns that they later brandished during the robberies. As noted in *Aoun*, a jury can draw inferences about a defendant's (or an accomplice's) intent based on all the facts and circumstances surrounding a crime's commission. *Id.*, at *5; *see also Rosemond*, 134 S.Ct. at 1257, n. 9 ("In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission.").

16

Thus, the government proved that Taniguchi possessed advanced knowledge that guns might be brandished during those robberies, which means that Taniguchi qualified as an aider and abettor of a firearm offense under 18 U.S.C. § 924(c). Under *Rosemond*, this is what the government must prove to convict a defendant as an aider and abettor to a § 924 (c) firearm offense. Consequently, the Court is satisfied that the government proved the intent required under *Rosemond* to find Taniguchi guilty of aiding and abetting a § 924(c) offense.

In summary, Taniguchi has not alleged a viable claim of actual innocence which would afford him relief under § 2241. The Court will therefore deny Taniguchi's § 2241 petition and dismiss this proceeding.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Jay Kevin Taniguchi's 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] is **DENIED**;

2. The Court will enter an appropriate judgment; and

3. This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This October 8, 2014.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY